GEORGE W. CHIPMAN, Assignee in Insolvency,

*vs.*

FRANK E. PEABODY.

SAME, in equity, *vs.* EDWARD STETSON, and another.

Penobscot.    Opinion January 10, 1896.

*Insolvency. Retroactive Statutes. Attachment. Mortgage. R. S., c. 70 ; Stat. 1891, c. 109.*

The statute of 1891, c. 109, amendatory of the insolvent law, and subjecting property of insolvent non-resident debtors within this State to the jurisdiction of the Court of Insolvency, *is held* to be prospective in its operation and not retroactive.

*Held*; that a lien created by an attachment of a non-resident debtor's property in this State before the enactment of the statute of 1891, c. 109, is not affected by subsequent proceedings in insolvency against such debtor under that act.

A non-resident gave on December 17, 1890, a mortgage of lands in Maine duly recorded to the defendant to secure a pre-existing debt. The debtor was decreed an insolvent on petition of his creditors filed in Penobscot county, May 11, 1891, under the Statute of 1891, c. 109, which went into effect May 3, 1891. *Held;* that the proceedings in insolvency did not invalidate the mortgage.

See *Peabody* v. *Stetson,* ante, p. 273.

ON REPORT.

The first of these actions was a writ of entry.

Plea, nul. disseizin.

The plaintiff claimed title as assignee in insolvency of Dudley C. Hall, of Medford, Massachusetts. The defendant claimed title under a mortgage from Dudley C. Hall to himself; and it was admitted that such mortgage was given by said Hall to secure a pre-existing debt, and for no other purpose.

Plaintiff read in evidence the following : A certified copy of the petition in insolvency by Henry Bradlee and others, creditors of Dudley C. Hall, filed May 11, 1891, in Penobscot county, and adjudication and decree thereon dated June 11, 1891.

A certified copy of memorandum of first meeting of creditors, July 9, 1891.

A certified copy of the docket entry, showing appearance of counsel for the insolvent.

A certified copy of the choice of assignees dated July 9, 1891.

A certified copy of the acceptance of the assignees, dated July 9, 1891.

A certified copy of the assignment, dated July 22, 1891.

It was admitted that William C. Haskins, one of the assignees of the insolvent estate of Dudley C. Hall, deceased, February 17, 1892.

The defendant read in evidence the following :

Copy of mortgage from Dudley C. Hall to Frank E. Peabody, dated December 17, 1890, recorded in Northern District, Aroostook county, April 13, 1891, at one hour and thirty minutes, P. M., in volume 24, pages 233, 234, 235, 236, and 237.

It was admitted by plaintiff that this same mortgage was also duly recorded in the registry of deeds for the southern district of Aroostook county, December 29, 1890, in vol. 118, page 359.

Defendant also read in evidence a certified copy of notice of foreclosure of said mortgage, dated October 7, 1891, published in the Aroostook Republican, at Caribou, October 14th, 21st and 28th, 1891, entered in the registry for the Northern District, Aroostook county, in volume 1, pages 371, 372 and 373, of the records of foreclosure.

At the conclusion of the evidence the case was withdrawn from the jury and reported to the law court for such decision as the legal rights of the parties may require.

The second action was a bill in equity, which after setting forth the above proceedings in insolvency against Dudley C. Hall, a non-resident debtor, alleges the attachment of his real estate in this State, and its seizure and sale on execution to the defendants after judgment. The particulars of the attachment, etc., are stated in the case, *Peabody* v. *Stetson,* ante, p. 273.

The bill further alleges:

"Seventh. That all of the aforesaid attachments made as aforesaid, being made within four months preceding the commencement of the insolvency proceedings aforesaid, (the petition being filed on the 11th day of May, 1891, and the adjudication of insolvency being on the 11th day of June, 1891,) were dissolved by virtue of section 33 of chapter 70 of the Revised Statutes of Maine, and that the sales on said execution were null and void.

"Eighth. That all the conveyances made as aforesaid in pursuance of said void sales, duly recorded as aforesaid, although themselves null and void, yet constitute a cloud upon the title of your complainant to said lands in said several counties, and that he is unable to sell and dispose of the aforesaid lands, and property of said insolvent estate and divide the proceeds among the creditors of said estate, and wind up the affairs thereof, so long as said cloud remains upon the title as aforesaid.

"Wherefore, your complainant prays this Honorable Court to decree that all of the aforesaid execution sales, and the several

conveyances made thereon, to be null and void, and that the respondents be ordered to release their apparent title to the several parcels above described to your complainant, and for such further relief as the case may require.

"Geo. W. Chipman, Assignee.

"Dated, Boston, Aug. 6, A. D., 1894.

William B. French,     ⎫
        Boston, Mass.  ⎬ Complainant's Solicitors."
Charles H. Bartlett,   ⎭

Answer. . : "Respondents deny the allegations of paragraph seventh of complainant's bill and say that said attachments were and are valid, and the sales as stated of the real estate on said execution were and are valid and that they, said respondents, by virtue thereof hold and are entitled to said real estate ; and they say that the proceedings in insolvency in this State against said Dudley C. Hall cannot affect or impair the said attachments and said sales on execution, and say that said proceedings in insolvency in this State were under and by virtue of the laws of this State approved and enacted March 27, 1891, and which did not take effect and become effective until May 3, 1891, and long subsequent to the date of said attachments ; and said law and statute so as aforesaid enacted, was not, and was not intended to be, retroactive, and by express provision of law said statute and said proceedings under same cannot affect the said writ and action of respondents against said Hall nor the said attachments of real estate on said writ, nor the said sales on execution nor the title of respondents to said real estate, by virtue of said sales."

The case was heard on bill, answer, replication and proofs.

*Charles H. Bartlett, and W. B. French*, of the Boston bar, for plaintiff, in the action at law, argued :

It is admitted that the mortgage was given by the debtor Hall to the defendant Peabody to secure a pre-existing debt, and that the mortgage was not recorded in the northern district of Aroostook three months prior to the commencement of insolvency proceedings against Mr. Hall ; and it follows that,

if the statute is literally construed, the mortgage was not seasonably recorded, and the assignee took the lands free and discharged therefrom.

The plaintiff contends that the statute (R. S., c. 70, § 33,) requiring a three months' record prior to the commencement of proceedings in insolvency must be observed, because it is a law governing the transfer of titles to land, and was in force when the mortgage was given.

It is well established that all instruments and contracts affecting the title to land must, to have any validity, be executed in the form and attended with all the solemnities required by the laws of the state or country in which the land is situated. *Cutter* v. *Davenport*, 1 Pick. 86; *Osborn* v. *Adams*, 18 Pick. 245-247; *Goddard* v. *Sawyer*, 9 Allen, 78; *Hosford* v. *Nichols*, 1 Paige Ch. N. Y. 220-225; and *Houston* v. *Nowland*, 7 Gill & J. (Md.) 480-493. It is also familiar law that the capacity of the parties to take and hold land is determined by the lex loci.

There has been a gradual and continuous growth in the United States, from an early day, in extending the provisions of laws governing the registration of conveyances, until now, not only the whole system of land titles, but also the titles to almost all kinds of personal property, are governed by laws prescribed by statute. Webb, Record Titles, § 4.

These recording acts have uniformly been liberally construed, so that they might attain their intended object. *Kelly* v. *Calhoun*, 95 U. S. 710; *National Bank* v. *Conway*, 1 Hughes, U. S. 710; *Parkist* v. *Alexander*, 1 Johns. Ch. 393; *Jackson* v. *Town*, 4 Cow. 549-605; *Fort* v. *Burch*, 6 Barb. 60-70; *Peck* v. *Mallams*, 10 N. Y. 543; *Moore* v. *Thomas*, 1 Oregon, 201-252; *Kenyon* v. *Stewart*, 44 Penn. St. 179-192; *Fallass* v. *Pierce*, 30 Wis. 480.

A statute requiring mortgages to be recorded is a lex loci which must be observed in order to give them validity against third parties who have acquired an interest in the property without notice of the incumbrance. Broome on Mortgages, § 92; 1 Jones on Mortgages, § 472, and cases cited; *Bacon* v. *Van Schoonhoven*, 87 N. Y. 446-450; *Decker* v. *Boice*, 83 N.

Y. 215-220; *Yerger* v. *Burt*, 56 Iowa, 77; *Henderson* v. *Pilgrim*, 22 Texas, 464; *Hayes* v. *Tiffany*, 25 Ohio St. 549-552; *Nailor* v. *Young*, 7 Lea, (Tenn.) 737; *Shaw* v. *Wilshire*, 65 Maine, 485.

Counsel also cited: 2 Pars. Cont. * 572; *Goddard* v. *Sawyer*, 9 Allen, 78; R. S., c. 70, § 33; *Owen* v. *Roberts*, 81 Maine, 439; Reno on Non-Residents, § 282.

The provision in regard to requiring the three months' record existed at the time of the contract forming a part thereof, and could be taken advantage of as soon as a state of facts arose, giving the court jurisdiction of the person; that is, whenever Hall came to Maine, and should go into, or be put into insolvency.

The provision in the insolvency act requiring mortgages given to secure a pre-existing debt to be recorded three months before the commencement of insolvency proceedings, to be good as against the assignee of the estate of the mortgagor, is one of those solemnities which the law of the place may properly prescribe, and which must be observed to give the mortgage validity on the happening of the contingency within the prescribed time.

The object of the legislature in imposing the obligation of recording such mortgages within a prescribed time was undoubtedly to secure prompt registration, that the public might know, or have the means of knowing, the actual title to lands by an examination of the record in the registry of deeds of the district in which the land is situated.

*J. B. Peaks*, for defendant, Peabody.

There is no admission and no proof that Hall, the mortgagor, was insolvent or in contemplation of insolvency at the time he gave the mortgage. And it is not admitted and it is not proved that the mortgage was given with a view of giving a preference to any creditor. And it is neither admitted nor proved that the defendant had reasonable cause to believe that the mortgagor was insolvent or in contemplation of insolvency. Nor that such mortgage was made in fraud of the laws relating to insolvency.

The language of the admission is that it was given to secure a pre-existing debt, and for no other purpose. The very words

"and for no other purpose" takes the case entirely out of the provisions of R. S., c. 70, § 52. Further, one of the provisions of section 52 is that such payment, pledge, assignment, or conveyance must be made in fraud of the laws relating to insolvency. At the time this mortgage was made, there were no laws relating to insolvency which could affect it in the least, as non-resident property was not subject to laws relating to insolvency in any way whatever.

The law of 1891 is simply an amendment of the existing statute. It is intended to put the affairs of non-resident and resident insolvents into the same court, where they are to be governed by the same process, where all insolvent assets are to be distributed by the provisions of R. S., c. 70, but it cannot affect the obligation of a contract such as this. It would be unconstitutional. *Bryant* v. *Merrill*, 55 Maine, 515.

Argument, in the equity case, by *Messrs. French & Bartlett.*

1. That the legislature clearly intended that deeds of assignment issued in insolvency cases after the amended act went into operation, should dissolve all attachments made within four months prior to the commencement of insolvency proceedings.

2. That the statutory rule of construction must give way to the clearly expressed intent of the legislature.

3. That the remedy by attachment on mesne process is not a vested right, but a contingent lien depending for its existence upon legislative will, and that it forms no part of the obligation of the contract.

4. That the defendant's levy did not disseize the plaintiff, and is only a cloud upon his title, to remove which equity alone affords a remedy.

R. S., c. 1 § 3, providing that "actions pending at the time of the passage or repeal of an act shall not be affected thereby" is not applicable. *Kilborn* v. *Lyman*, 6 Met. 299. The attachment was dissolved. The lien of an attaching creditor is conditional and qualified. It does not become fixed, absolute or vested until final judgment and levy. It is a privilege conferred by the legislature subject to modification. 1 Am. and

Eng. Encly. p. 894 ; *Ex parte Foster*, 2 Story, 145 ; *Kilborn* v. *Lyman*, supra.

There can be no vested right in a statute process or remedy. *Oriental Bank* v. *Freese*, 18 Maine 109-112 ; *Coffin* v. *Rich*, 45 Maine, 507-514 ; *Kingley* v. *Cousins*, 47 Maine, 91 ; *Baldwin* v. *Buswell*, 52 Vt. 57 ; *Harrison* v. *Sterry*, 5 Cranch, 289-299 ; *Bigelow* v. *Pritchard*, 21 Pick. 169-175 ; *Grant* v. *Lyman*, 4 Met. 470 ; *Kilborn* v. *Lyman*, 6 Met. 299-304.

Nor can there be any vested right in a mechanics' lien, which is a statute remedy. *Frost* v. *Ilsley*, 54 Maine, 345-351 ; *Bangor* v. *Goding*, 35 Maine, 73 ; *Gray* v. *Carleton*, 35 Maine, 481 ; *Hanes & Co.* v. *Wadey*, 73 Mich. 178 ; *Woodbury* v. *Grimes*, 1 Col. 100-106 ; *Bailey* v. *Mason*, 4 Minn. 546.

An act making witnesses competent or incompetent applies to cases pending, and causes of action existing when it takes effect, because it is purely remedial. *Westerman* v. *Westerman*, 25 Ohio, 500-507 ; *John* v. *Bridgman*, 27 Ohio St. 22-43 ; *Oliver* v. *Moore*, 12 Heiskell, (Tenn.) 482-487 ; *Hepburn* v. *Curts*, 7 Watts, 300.

An act creating a remedy where none existed is valid, because it interferes with no contract and divests no vested rights. *Schenley* v. *Commonwealth*, 36 Penn. St. 29-57 ; *Underwood* v. *Lilly*, 10 Serg. & R. (Penn.) 97-101 ; *Hosmer* v. *People*, 96 Ill. 58-61 ; *Wellshear* v. *Kelly*, 69 Mo. 343-354 ; *Paschall* v. *Whitsett*, 11 Ala. 472-478.

And any lien given by the legislature may be taken away by the legislature without in any wise interfering with or impairing the obligation of contracts. *Martin* v. *Hewitt*, 44 Ala. 418-435 ; *Iverson* v. *Shorter*, 9 Ala. 713 ; *Watson* v. *Simpson*, 5 Ala. 233 ; *Beck, Adm'r,* v. *Burnett*, 22 Ala. 822 ; *Fitzpatrick* v. *Edgar*, 5 Ala. 499 ; Cooley Const. Lim. 361.

The extent of the operation of the deed of assignment upon previous attachments depends upon the law in force when the assignment was made. *O'Neil* v. *Harrington*, 129 Mass. 591 ; *Sullings* v. *Ginn*, 131 Mass. 479.

And it has been repeatedly held that a debtor has no vested

right to a discharge in insolvency, and that the law in force when the discharge is granted governs. *Ex parte Lane*, 3 Met. 213 ; *Eastman* v. *Hillard*, 7 Met. 420 ; *Eddy* v. *Ames*, 9 Met. 585 ; *Thayer* v. *Daniels*, 110 Mass. 345 ; *Batten* v. *Sisson*, 133 Mass. 557.

The plaintiff has no remedy at the common law. He has not been disseized or ousted ; the defendant has made no entry on the lands in question for the purpose of dispossessing the plaintiff, or done any act to gain possession in himself. The only thing looking towards a disseizin was the levy, made long after the statutory deed of assignment was issued and had been recorded. *Jones* v. *Light*, 86 Maine, 437.

The remedy by attachment on the mesne process is no essential right which enters into and forms a part of the obligation of the contract. It is merely a matter of procedure, depending wholly upon the statute, and is subject to repeal at any time at the will of the legislature, without any violation of the constitutional provision prohibiting the enactment of laws impairing the obligation of contracts. See *Ogden* v. *Saunders*, 12 Wheat. 213 ; *Kilborn* v. *Lyman*, supra ; *Bank* v. *Freese*, supra ; *Kingley* v. *Cousins*, supra ; *Baldwin* v. *Russell*, supra ; *Bigelow* v. *Pritchard*, supra ; *Grant* v. *Lyman*, supra ; *Sprague* v. *Wheatland*, 3 Met. 416 ; *Ward* v. *Proctor*, 7 Met. 318 ; *Stetson* v. *Hayden*, 8 Met. 29 ; *Shelton* v. *Codman*, 3 Cush. 318-321 ; *Jewett* v. *Phillips*, 5 Allen, 152 ; *Saunders* v. *Robinson*, 144 Mass. 306 ; *Geer* v. *Horton*, 159 Mass. 261 ; *Berry* v. *Clary*, 77 Maine, 482 ; *Blount* v. *Windley*, 5 Otto, 173 ; *Sampson* v. *Sampson*, 63 Maine, 328 ; *Bird* v. *Keller*, 77 Maine, 270 ; *Ex parte Lane*, 3 Met. 213.

*Charles P. Stetson*, for defendants, Stetsons.

SITTING : PETERS, C. J., FOSTER, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

STROUT, J. These cases were argued at the same time, and are so intimately related, that they may be considered together.

The plaintiff is the assignee in insolvency of Dudley C. Hall,

a non-resident of Maine, against whom a decree in insolvency passed under chapter 109 of the laws of 1891, upon a petition filed by creditors in Penobscot county, on May 11, 1891. On December 17, 1890, Dudley C. Hall mortgaged to Frank E. Peabody certain lands in Aroostook county, part of the lands being in the northern and part in the southern registry districts. The mortgage was recorded in the southern district on December 29, 1890; and in the northern district, on April 13, 1891. The mortgage, which contained a provision of foreclosure in one year, appears to have been regularly foreclosed, by publication, the first publication being on October 14, 1891.

The suit of *Chipman* v. *Peabody* is a writ of entry to recover certain lands in the northern district of Aroostook county, which were included in the mortgage of Hall to Peabody.

In the equity suit against Stetson, complainants claim title to these and other lands in Aroostook, Penobscot and Piscataquis counties, as assignee in insolvency of Dudley C. Hall; all of which are claimed by defendants under an execution sale and conveyance to them by the officer making the sale, by virtue of an attachment made on writ, *George Stetson* v. *Dudley C. Hall et al.*, of the Penobscot lands, on March 10, 1891, of the Piscataquis lands on March 11, 1891, and of the Aroostook lands on March 12, 1891; the complainants claiming that the mortgage to Peabody, being "to secure a pre-existing debt, and for no other purpose," that the attachments of all said lands were vacated by the insolvency proceedings, and that the record title of defendants is a cloud upon complainants' title, which is sought to be removed.

First, as to the real action.

The mortgage to Peabody was made in December, 1890, four months before the enactment of the law which made Hall, a non-resident, subject to insolvency proceedings, and five months before it went into operation. When made, it was a valid, legal contract, under which valuable real estate was conveyed to Peabody. It was recorded in both Aroostook Districts before the law of 1891, chapter 109, was in force. To give that statute a retroactive effect to invalidate that contract, would be clearly

unconstitutional. *Bronson* v. *Kinzie*, 1 How. 312 ; *Edwards* v. *Kearsey*, 96 U. S. 607 ; *MacNichol* v. *Spence*, 83 Maine, 90 ; *Palmer* v. *Hixon*, 74 Maine, 448.

The act of 1891 must be construed as prospective in its operation ; and so far as non-residents are concerned, it was a new law, and as to them all the provisions of the insolvent law must be regarded as first in force on May 3, 1891, when chapter 109 became operative. The mortgage from Hall to Peabody was not invalidated by Hall's insolvency.

Second, as to the equity suit.

The attachment upon the Stetson writ, created a lien upon the lands attached, which became perfected by subsequent proceedings. *Kilborn* v. *Lyman*, 6 Met. 304 ; R. S., chapter 81, § § 56, 59. This lien was in existence before the enactment of chapter 109 in 1891, and nearly two months before that statute was in force. The act did not provide for any retroactive effect, and none is implied from its language. By the established rule of construction, it should have a prospective and not retroactive operation. To give it the latter effect is, to say the least, of doubtful constitutionality. Cases supra. It better comports with the harmonies of the law, and the rights of parties, to treat it as prospective only, in all its provisions. *Torrey* v. *Corliss*, 33 Maine, 336. So treated, the defendants have acquired legal title to the lands sold on execution, and the assignment in insolvency to the complainant conveyed only the equity of redemption from such sale, which has long since expired. The complainants now have no title to any of the lands in controversy.

The statute of 1891 is more fully examined in the opinion in *Peabody* v. *Stetson*, ante, p. 273, argued at the same time as these cases.

The entry will be in the case of *Chipman* v. *Peabody*,

*Judgment for defendant.*

And in the case of *Chipman, in equity*, v. *Stetson*,

*Bill dismissed.*